# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LATOSHA BROWN; CANDACE FOWLER; JENNIFER IDE; CHALIS MONTGOMERY; KATHARINE WILKINSON, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, in his official capacity as Secretary of State of the state of Georgia, <br><br> Defendant. | CASE NUMBER |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

1. Defendant Brian P. Kemp is a candidate for Governor in Georgia. He is also the Secretary of State of Georgia, charged with fairly administering the state's elections. This violates a basic notion of fairness – that a man should not be a judge in his own matter – and it has had predictable results: In recent days, Defendant Kemp has used the official powers of his office to interfere in the election to benefit himself and his political party and disadvantage his

1

opponents.  In doing so, he has violated the Constitutional rights of Plaintiffs and other Georgia voters.

2. Acting as chief election administration official in an election in which one is running for office poses a risk of bias under the best of circumstances. But Defendant Kemp's efforts to use the authority of his office to advance his campaign have been extreme.  As one former Georgia Secretary of State observed, "I just cannot imagine the candidate remaining involved in the investigation of something that might relate so directly to their own race. It doesn't meet the smell test under anything I could measure."[1] One prominent election law scholar described Defendant Kemp's actions as "perhaps the most outrageous example of election administration partisanship in the modern era."[2] Another election law expert described Defendant Kemp's conduct as "an appalling abuse of power" that "undermines democracy and hurts confidence in

---

[1] Jeremy Redmon, *Brian Kemp Under Scrutiny After Announcing Probe of Democrats*, Atlanta Journal-Constitution (Nov. 4, 2018), https://www.ajc.com/news/state--regional-govt--politics/probe-georgia-democratic-party-prompts-fresh-scrutiny-brian-kemp/AElKvktttgsz5UgJbiXgyO/.
[2] Richard L. Hasen, *Brian Kemp Just Engaged in a Last-Minute Act of Banana-Republic Level Voter Manipulation in Georgia*, Slate (Nov. 4, 2018), https://slate.com/news-and-politics/2018/11/georgia-governor-candidate-brian-kemp-attempts-last-minute-banana-republic-style-voter-manipulation.html.

the work done by professional election officials across the nation to run fair elections."[3]

3. Plaintiffs are registered voters in Georgia who have voted in or plan to vote in the 2018 elections, including in the gubernatorial race in which Defendant Kemp is a candidate. In light of Defendant Kemp's recent conduct, Plaintiffs have a strong, well-founded, and reasonable belief that Kemp will not be a fair judge of the outcome of the elections and will exercise his official duties in a biased manner that denies them the right to cast an effective vote.

4. Plaintiffs come before this Court with a simple request. Defendant's clear bias in favor of his own candidacy demonstrates the truth of the axiom that no man may be the judge in his own case. This Court should not permit Defendant Kemp to resolve the outcome of the elections in which he is a candidate under these circumstances.

## PARTIES

5. Plaintiffs are all residents of Georgia and registered voters in the state of Georgia. Each has already cast a ballot in the 2018 general election or plans

---

[3] Emily Kopp, *Election Law Experts Decry Brian Kemp's Hacking Allegation in Georgia*, Roll Call (Nov. 5, 2018), http://www.rollcall.com/news/politics/election-law-experts-decry-brian-kemps-hacking-allegation-georgia.

to do so. Each also plans to vote in any runoff conducted as part of the 2018 general election.

6. Plaintiff LaTosha Brown is a resident of and is registered to vote in Fulton County who voted in the 2018 Democratic primary. She voted in the general election for Governor on October 26, 2018.

7. Plaintiff Candace L. Fowler is a resident of and is registered to vote in Dekalb County who voted in the 2018 Democratic primary for Governor. She voted in the general election for Governor on October 31, 2018.

8. Plaintiff Jennifer N. Ide is a resident of and is registered to vote in Fulton County who voted in the 2018 Democratic primary for governor. She voted in the gubernatorial election during early voting.

9. Plaintiff Chalis Montgomery is a resident of and is registered to vote in Barrow County who voted in the 2018 Democratic primary for governor. She voted in the gubernatorial election during early voting.

10. Plaintiff Katharine Wilkinson is a resident of and is registered to vote in Fulton County who voted 2018 Democratic primary for governor. She voted in the general election for Governor on October 26, 2018.

11. Defendant Brian P. Kemp is the Secretary of State of Georgia and the Republican candidate for Governor in Georgia.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims in this action arise under federal law, specifically 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all Defendants are domiciled in the District, and a substantial portion of the events giving rise to this litigation took place there.

## FACTUAL ALLEGATIONS

The Role of the Secretary of State in Election Administration

14. The Secretary of State's office has substantial responsibilities for administering fair elections in the state. Among other things, the office is responsible for certifying election results; certifying the qualification of candidates and preparation of ballots and election forms; investigating election fraud; and enforcing state election laws. O.C.G.A. 21-2-50.

15. The Secretary of State is charged with tabulating, computing, and canvassing the votes cast for all candidates in both regularly scheduled and run-off elections – and thereby declaring who has won a particular election. O.C.G.A. § 21-2-499. The Secretary of State, under Georgia law, also determines when to order a recount in close elections. O.C.G.A. § 21-2-495.

16. Defendant Kemp, by nature of his official role, also serves as Chairman of the State Board of Elections. The Board's duties include: "[t]o investigate, or authorize the Secretary of State to investigate, when necessary or advisable the administration of primary and election laws and frauds and irregularities in primaries and elections and to report violations of the primary and election laws either to the Attorney General or the appropriate district attorney who shall be responsible for further investigation and prosecution." O.C.G.A. § 21-2-31.

17. Given the Secretary of State's substantial duties with respect to election administration, many (albeit not all) prior Georgia Secretaries of State have recused themselves from their official duties when they themselves are candidates for election. For example, then-Secretary of State Cathy Cox recused herself from her role chairing the State Election Board in 2006. Then-Secretary Max Cleland resigned while he sought a U.S. senate seat. And in 2010, Republican Karen Handel did the same when running for governor.

18. In contrast, Defendant Kemp has steadfastly refused to recuse from supervising the gubernatorial election in which he is a candidate. He has even pledged to retain authority over a vote recount, if his race against his opponent Stacey Abrams is close enough to require one.

Defendant Kemp's Recent Actions Demonstrating Extreme Bias in the Conduct of His Duties

19. Defendant Kemp has not only failed to follow the model of his predecessors who have recused themselves; instead he has sought to exercise the official powers and duties of his office in a biased manner to achieve maximum personal and partisan advantage, while neglecting his core responsibility to ensure a secure election.

20. For years, election security experts have warned about the vulnerability of Georgia's election systems to cyber intrusion. Despite repeated warnings, Defendant Kemp has failed to take action to protect the system. Two years ago, Kemp turned down an offer from the U.S. Department of Homeland Security to provide election cybersecurity assistance before the 2016 election. In August 2018, Defendant Kemp faced a federal lawsuit alleging that he had failed to adequately secure Georgia's voting system, exposing the voting records of over six million Georgia residents.

21. On Saturday, November 3, election security attorneys notified the FBI and counsel for Defendant Kemp that they had learned from a private citizen of a major flaw in the voter registration database. According to independent computer scientists, that flaw could enable anyone with access to an individual

voter's personal information to use Georgia's My Voter registration portal to alter or delete a voter's record, thereby creating problems when a registered voter tries to cast a ballot. On information and belief, the purpose of this notification was to alert the Secretary of State's office to a vulnerability that should be fixed.

22. Rather than address the substance of the concern, Defendant Kemp falsely and without evidence accused his opponent's political party, the Democratic Party of Georgia, of possible cyber crimes — because they had received the same report of flaws in the election database.

23. On Sunday, November 4, the Defendant caused the first of two statements to be posted on the official Secretary of State website. It claimed:

> After a failed attempt to hack the state's voter registration system, the Secretary of State's office opened an investigation into the Democratic Party of Georgia on the evening of Saturday, November 3, 2018. Federal partners, including the Department of Homeland Security and Federal Bureau of Investigation, were immediately alerted. "While we cannot comment on the specifics of an ongoing investigation, I can confirm that the Democratic Party of Georgia is under investigation for possible cyber crimes," said Candice Broce, Press Secretary. "We can also confirm that no personal data was breached and our system remains secure."

24. Later that day, the Defendant caused a second statement to be posted on the official Secretary of State website. It stated:

> We opened an investigation into the Democratic Party of Georgia after receiving information from our legal team about failed efforts to breach the

> online voter registration system and My Voter Page. We are working with our private sector vendors and investigators to review data logs. We have contacted our federal partners and formally requested the Federal Bureau of Investigation to investigate these possible cyber crimes. The Secretary of State's office will release more information as it becomes available.

25. The official Secretary of State website where these statements were posted is the same website that Georgia voters use to check polling locations, verify their voter registration status, and learn other key election information. As a result of Defendant's decision to issue these statements, any Georgia voter who visited the Secretary of State's website in the days immediately preceding the election would see a posting – completely unsupported by evidence – suggesting that the Democratic Party had engaged in criminal activity. This use of Defendant's official website to post what amounts to a false but powerful advertisement against his opponent's political party in a prominent location that many voters would be checking before voting evinces his strong bias against his political opponents and in favor of Defendant's own party.

26. These statements were false and reckless. In fact, the private citizen who discovered the election security vulnerability also informed Democratic Party officials about the vulnerability. Once notified, those officials contacted computer security experts to notify them of the vulnerability so that it could be addressed.

27. Underscoring the political nature of the baseless accusations, shortly after posting these charges to the Secretary of State's website, the Kemp for Governor campaign issued a press release entitled "Democrats Under Investigation for Failed Hacking Attempt, Cyber Crimes." In fewer than three paragraphs, this press release referenced actions taken both by Defendant Kemp *as* Secretary of State and by Defendant Kemp *as* a candidate, underscoring the inherent conflict of his roles in this particular circumstance.

28. Upon information and belief, there is not and never was any basis for Defendant Kemp to accuse the Democratic Party of Georgia of seeking to hack into the state's election systems. Rather, Defendant Kemp used the resources of his office and the official Secretary of State website to make these accusations to deflect blame for his own failures to address flaws in the election system and to falsely harm his opponents. As one election law scholar observed, "what Kemp has done now goes beyond the pale. He's accused his opponents of election tampering without evidence on the eve of the election, and plastered the incendiary charge on an official state website in the days before his office will administer that election. This is some banana republic stuff."[4]

---

[4] Hasen, *supra* n. 2.

29. Defendant Kemp has made previous unfounded allegations of hacking into the Secretary of State's systems. He levelled similar baseless allegations against the U.S. Department of Homeland Security (DHS) after the 2016 election, claiming DHS had sought to penetrate the Secretary of State's firewall. A federal Inspector General investigation found that what Kemp accused of being a hacker was actually an employee of the Federal Law Enforcement Training Center checking the state's firearms license database.

<u>Defendant Kemp's Recent Actions Follow Earlier Incidents in Which He Has Used His Office for Inappropriate and Biased Partisan Purposes</u>

30. This was not the first time that Defendant Kemp has sought to use his Office for partisan advantage.

31. As one example, Kemp has used his office to lead or direct voter purges that removed more than a million names from the state's voter rolls between 2012 and 2016, and some 670,000 last year. One study found that 107,000 of those voters were purged due to a controversial "use it or lose it" practice.[5]

---

[5] Angela Caputo, et al., *They Didn't Vote . . . Now They Can't*, APM Reports (Oct. 19, 2018), https://www.apmreports.org/story/2018/10/19/georgia-voter-purge.

32.     As another example, Kemp's office held up 53,000 voter registrations – approximately 70 percent of them from black applicants – because they did not clear an "exact match" process he implemented.

33.     Defendant Kemp's restrictive voter regulations have faced recent scrutiny from the courts. Two weeks ago, a federal judge ordered Defendant Kemp to instruct election officials to stop summarily discarding absentee ballots that contained signature discrepancies. And as recently as Friday, a federal judge struck down the restrictive "exact match" process instituted by Defendant Kemp. The law had jeopardized the ability of over 3,000 newly naturalized citizens to vote in the election.

34.     Plaintiffs have a right to have Georgia's elections administered by an official who has not already demonstrated extreme bias in the exercise of his official responsibilities.  That is the only way they can be confident that the results of the election in which they have participated will be accurate and reliable and that their votes will be counted.

## CLAIMS FOR RELIEF

### Count One

**Deprivation of Due Process in Violation of 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution**

35. Plaintiffs incorporate paragraphs 1-34 by reference.

36. Defendant Kemp suffers from a substantial conflict of interest and has demonstrated actual bias in the conduct of his office with respect to the administration of the state's 2018 elections.

37. Acting under color of state law, Defendant Kemp has deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States – namely the due process right to have an impartial official preside over an essential administrative function.

38. As a result of Defendant Kemp's conflict of interest and actual bias, it would be improper, unfair, and contrary to the due process of law for Defendant Kemp to have the power to certify the winners of the 2018 elections, to administer a run-off of the 2018 election, to adjudicate any challenges to the administration of the 2018 election, or otherwise to oversee the reporting of the 2018 election results.

## Count Two

**Violation of the Right to Vote and Right of Free Association in Violation of 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution**

39. Plaintiffs incorporate paragraphs 1-34 by reference.

40. The First Amendment forbids officials from burdening associational rights by penalizing the exercise of those rights.

41. Acting under color of state law, Defendant Kemp has deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States – namely the First Amendment right to freely associate with other members of a political party.

42. The burdens on Plaintiffs' associational rights are not narrowly tailored to any compelling governmental purpose – to the contrary, they serve no legitimate purpose whatsoever.

## Count Three

**Deprivation of the Right to Vote in Violation of 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution**

43. Plaintiffs incorporate paragraphs 1-34 by reference.

44. Plaintiffs are lawful Georgia voters whose right to vote and to have their votes counted fairly and accurately are protected by the U.S. Constitution.

14

45. Acting under color of law, Defendant Kemp has acted with actual bias in the conduct of his office, demonstrating a high probability that he will deny Plaintiffs' their constitutional right to have their votes counted.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Assume jurisdiction over this action;

2. Grant a declaratory judgment in favor of Plaintiffs;

3. Grant a temporary restraining order (TRO) and preliminary injunction in favor of Plaintiffs as set forth in the Proposed Order attached to Plaintiffs' motion for a TRO;

4. Award Plaintiffs costs and attorneys' fees; and

5. Provide any other relief that the Court deems just and necessary.

Respectfully submitted,

Date: November 6, 2018

*/s/ Michael J. Moore*
MICHAEL J. MOORE
Georgia Bar No. 520109
CHARLES W. BYRD
Georgia Bar No. 100850
CAROLINE G. MCGLAMRY
Georgia Bar No. 230832
WADE H. TOMLINSON III
Georgia Bar No. 714605
POPE, MCGLAMRY, KILPATRICK, MORRISON

& NORWOOD, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326
Telephone: (404) 523-7706
efile@pmkm.com

BRYAN L. SELLS
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
bryan@bryansellslaw.com

LAURENCE M. SCHWARTZTOL*
JUSTIN FLORENCE*
Protect Democracy Project, Inc.
10 Ware Street
Cambridge, Massachusetts 02138
Telephone: (202) 945-2092
Facsimile: (929) 777-8248
larry.schwarztol@protectdemocracy.org

IAN BASSIN*
Protect Democracy Project, Inc.
222 Broadway Avenue, #1898
New York, NY 10038
Telephone: (202) 599-0466
Facsimile: (929) 777-8428
ian.bassin@protectdemocracy.org

JESSICA MARSDEN*
Protect Democracy Project, Inc.
106 S. Greensboro St, Suite E
Carrboro, North Carolina 27510
Telephone: (202) 672-4812
Facsimile: (929) 777-8428

16

jess.marsden@protectdemocracy.org

*\*Pro Hac Vice* forthcoming

*Counsel for Plaintiffs*