IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ALTANTA DIVISION

| | | |
|---|---|---|
| LATOSHA BROWN; CANDICE FOWLER; JENNIFER IDE; CHALIS MONTGOMERY; KATHARINE WILKINSON, | * | |
| Plaintiffs, | * | Civil Action No.: 1:18-cv-5121-WMR |
| v. | * | |
| BRIAN KEMP, in his official capacity as Secretary of State of the State of Georgia, | * | |
| Defendant. | * | |

**DEFENDANT BRIAN KEMP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

Plaintiffs' lawsuit and motion for a temporary restraining order do not provide the sound explanation, let alone the evidence, that would be necessary to support the extraordinary relief they seek. Plaintiffs essentially are asking this Court to unseat an elected state official by stripping him of the responsibilities of his position. The responsibilities at issue, as shown herein, are largely ministerial as it relates to the 2018 election. But this does not detract from the gravity of the requested injunction,

requiring as it would that a federal court bar an elected state official from carrying out the responsibilities of his office.

Plaintiffs, by their own judicial admission, have exercised their right to vote in the 2018 election for governor of Georgia. Also, by their own judicial admission, each of them plans to vote in any runoff election. In other words, Plaintiffs state that they have exercised, and will continue to exercise, their right to vote. And the complaint and motion offer only speculation that their votes will not count. The motion should be denied.

## II. <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A. Plaintiffs Lack Standing for Prospective Injunctive Relief.

Standing is a threshold jurisdictional question that "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Dimaio v. Democratic National Committee*, 520 F.3d 1299, 1301 (11th Cir. 2008). The essential elements of standing are injury in fact, causation, and redressability:

> To have standing in federal court, a plaintiff must meet three requirements. First, he must have suffered an injury in fact: an invasion of a legally protected interest. [ ]. The injury must be concrete and particularized and actual or imminent, not conjectural or hypothetical. [ ]. Second, there must be a causal connection between his injury and the conduct he challenges, i.e., his injury must be fairly traceable to the challenged actions of the

> defendant. []. Third, it must be likely that plaintiff's injury will be redressed by a favorable decision of the court. [ ].

*Sicar v. Chertoff*, 541 F.3d 1055, 1059 (11th Cir. 2008) (internal quotation marks and citations omitted); *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006). "The Supreme Court has 'repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that 'allegations of *possible* future injury' are not sufficient." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202 (11th Cir. 2018) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original).

To establish "injury in fact" in the context of a claim seeking injunctive and declaratory relief the plaintiff must show a "real and immediate threat of future harm." *Elend*, 471 F.3d at 1207; *accord 31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir.), *cert. denied*, 540 U.S. 984 (2003). Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects. *See Elend*, 471 F.3d at 1207-1208 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) and *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)).

Finally, to establish injury in fact Plaintiffs must show and rely only on injury that they have suffered as individual voters. The suggestion that others may be discouraged from voting will not serve as the basis for harm to Plaintiffs sufficient to

establish the injury permitting their claims to proceed. *See Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018).

Under these principles, Plaintiffs lack standing to seek prospective injunctive relief because they have not shown a real and immediate threat of future injury, and have not shown the existence of a threatened injury that is certainly impending. Plaintiffs state that they have voted in the 2018 election, and they plan to vote in any runoff election. And they cannot premise any part of their claims or request for injunctive relief on a suggestion that other voters may be discouraged from voting in the election.

**B. Plaintiffs Fail to Meet Their Burden of Showing Entitlement to a Temporary Restraining Order.**

"It is settled law in this Circuit that a preliminary injunction is an 'extraordinary and drastic remedy.'" *Dekalb County Sch. Dist. v. Ga. Bd. of Educ.*, 2013 U.S. Dist. LEXIS 29535, *4 (N.D. Ga. Mar. 4, 2013) (citing *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)). "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, that the issuing of an injunction." *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 98 n. 2 (5th Cir. 1963). Accordingly, such relief "never ought to be extended, unless to cases of great injury, where courts of law cannot afford an adequate and commensurate remedy in

damages." *Id.* The Eleventh Circuit has instructed its district courts to be even more tentative in issuing injunctions when, as here, the party to be enjoined is a state governmental entity, stating:

> when, as in this case, [equitable remedies] are sought to be applied to officials of one sovereign by the courts of another, they can impair comity, the mutual respect of sovereigns—a legitimate interest even of such constrained sovereigns as the states and the federal government . . . [T]here is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state . . . .

*McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 487-88 (11th Cir. 1996).

In order to obtain such relief, the movant must show: (i) a substantial likelihood of success on the merits of the underlying case; (ii) irreparable harm in the absence of an injunction, (iii) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (iv) an injunction would not disserve the public interest. *See id.* The movant has the burden of persuasion as to all four requirements. *See United States v. Jefferson County*, 720 F. 2d 1511 (11th Cir. 1983).

A typical injunction is prohibitive in nature and seeks simply to maintain the status quo pending a resolution of the merits of the case. *See Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1196 (N.D. Ala. 2009). "When a preliminary injunction is sought to force another party to act, rather than simply to

maintain the status quo, it becomes a 'mandatory or affirmative injunction,' and the burden on the moving party increases." *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971); *see also, Dantzler, Inc. v. Hubert Moore Lumber Co.*, 2013 U.S. Dist. LEXIS 78664 (M.D. Ga. June 5, 2013) ("Plaintiff's request must be considered by the Court with greater scrutiny because the burden for a movant requesting a mandatory injunction is higher."). A plaintiff seeking a mandatory injunction "must make a clear showing of entitlement to the relief sought or demonstrate that extreme or serious damage would result absent the relief." *Verizon Wireless Pers. Commc'n LP v. City of Jacksonville, Fla.*, 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009). "[M]andatory injunctions are rarely issued . . . except upon the clearest equitable grounds." *United States v. Bd. of Educ. of Green Cty., Miss.*, 332 F.2d 40, 46 (5th Cir.1965). *See Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored").

As explained below, Plaintiffs have failed to establish the elements necessary to support their extraordinary request for mandatory, preliminary injunctive relief, with the result that it should be denied.

### 1. Plaintiffs Cannot Show a Substantial Likelihood of Prevailing on the Merits.

The most important factor in deciding whether to grant or deny a preliminary injunction is the plaintiff's likelihood of succeeding on the merits; a failure to meet this initial hurdle relieves a court from considering the remaining factors. *Church v. City of Huntsville*, 30 F.3d 1332, 1341-45 (11th Cir. 1994) (citing *Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Here, Plaintiffs do not have a substantial likelihood of prevailing on the merits.

#### a. Plaintiffs do not have a likelihood of success on their due process claim

Plaintiffs cannot prevail on their first cause of action for the alleged deprivation of their due process rights. (Compl., Count One). Under the Due Process Clause of the Fourteenth Amendment, the State is prohibited from "depriv[ing] any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1. The Due Process Clause provides two different kinds of constitutional protection: procedural due process and substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). While Plaintiffs fail to specify which type of protection they are invoking, the allegations of their complaint seem to indicate that is a procedural due process challenge.

Procedural due process "guarantees a person notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). In other words, the crux of procedural due process is that the state may not deprive a person of liberty or property without providing "appropriate procedural safeguards." *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974). To prevail on a procedural due process challenge, plaintiffs must first establish the existence of a constitutionally protected property or liberty interest that has been interfered with by the State. *See, e.g., Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). To determine whether such an interest exists, the court must look to applicable state law. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). This is because:

> Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, Plaintiffs cannot point to any property or liberty interest in having the election, certification, or recount process overseen by a newly installed replacement official. To the contrary, Plaintiffs admitted in their initial brief that nothing prohibits a Secretary of State from running for office while simultaneously serving as

a State official. Plaintiffs' procedural due process claim therefore fails because they have not identified any interest that is protected by the due process clause.

Nevertheless, in an effort to establish a protected interest, Plaintiffs cite to *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). But Plaintiffs' contention that *Caperton* is instructive and controlling in this case is incorrect. *Caperton* and its progeny address procedural due process in the sole context of judicial proceedings. *Id.* at 876. The specific issue in *Caperton* was whether a judge who previously received significant campaign contributions from a party whom he was now presiding over was too biased to provide the other party with a "fair trial in a fair tribunal," which is required by due process. *Id.*

Thus, *Caperton* is patently inapposite. Secretary Kemp is not presiding over a judicial procedure. Nor is he issuing judicial rulings that could affect Plaintiffs' rights to have a "fair trial in a fair tribunal." While Plaintiffs attempt to liken judicial proceedings to state elections, this analogy is inappropriate. Contrary to Plaintiffs' beliefs, Secretary Kemp is not involved in the tallying or certification process in any significant way, instead functioning as an administrative agent performing ministerial duties to the extent that his office, rather than county election officials, performs *any* role in this process. In Georgia, elections are conducted at the county level, and election ballots are counted at the county level. (Declaration of Chris Harvey, ¶ 3)

(*See* O.C.G.A. § 21-2-492, which charges each county election superintendent with arranging for the "computation and canvassing of the returns" after the election). The county returns are then certified by the county superintendent, no later than the Monday following the election, and immediately transmitted to the Secretary of State. O.C.G.A. § 21-2-493(k). After such certification, all election materials (including all ballots) are "deliver[ed] in sealed containers to the clerk of the superior court" of that county. O.C.G.A. § 21-2-500(a).

While the Secretary of State's Office must then certify the statewide results, this is simply ministerial. (Harvey Aff., ¶ 11). In particular, staff members double check the math on the county's vote totals and confirm that the totals on the paper document, which is certified, match what is reported electronically by the county. (*Id.*). Staff then add all of the county returns together, electronically, to tabulate the statewide total. (*Id.*). No staff member has discretion to change any vote totals for any county. In fact, if a staff member discovers a discrepancy within a county's numbers, corrections must be made at the county level. O.C.G.A. § 21-2-499(a).

As the foregoing facts demonstrate, Secretary Kemp's limited involvement in the election tallying and certification process is vastly different from the active involvement and decision-making that judges engage in during judicial proceedings. *Caperton* is, accordingly, inapplicable and cannot be used to establish an interest in

this case that would be entitled to protection under the Due Process Clause. In the absence of any case law indicating that such an interest exists, Plaintiffs are not substantially likely to prevail on their due process claim.

**b. Plaintiffs do not show a likelihood of success on the merits on a claim based on an alleged violation of the First Amendment freedom of association.**

Plaintiffs allege that Secretary Kemp used his office to advance his own political interests and they assert that Secretary Kemp has a history of using his official power to "engage in discriminatory partisan actions…," which Plaintiffs allege disfavor Democratic voters.

Plaintiffs cite to a number of actions by Secretary Kemp which they allege were improper abuses of power, point to a recent posting to the Secretary of State website referencing an attempt to breach the My Voter Page website and announcing that his office was investigating the Democratic Party for their affiliates' role in that attempt, and assert that by using his official website for such a purpose, Secretary Kemp has chilled potential Democratic voters and will likely cause difficulties with fundraising, voter registration, attracting volunteers and support.

Plaintiffs claim that Secretary Kemp's actions have discouraged their ability to associate and engage in protected First Amendment activity, thus violating their right to freedom of association under the First Amendment. They make only nonsupported

conclusory allegations of a burden on their First Amendment right of association. None of Plaintiffs' allegations support their contention that the Secretary's ministerial certification of the election will burden Plaintiffs' First Amendment rights of association. Moreover, the cases cited by Plaintiff do not support their claim.

Plaintiffs cite to cases that concern state election *rules, regulations, or processes*. *Williams v. Rhodes,* 393 U.S. 23, 34 (1968), concerned Ohio election laws which effectively prohibited new political parties from being placed on the ballot. *Vieth v. Jubelirer*, 541 U.S. 267 (2004), related to a claim that Pennsylvania's reapportionment plan with respect to congressional district was an unconstitutional gerrymander. *Elrod v. Burns*, 427 U.S. 347 (1976), concerned a political patronage practice of terminating public employees who would not pledge loyalty to a specific political party. *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000), concerned California's "blanket primary" system. The Supreme Court held that the system violated the plaintiff political parties' right of association because the regulation violated the parities' rights to choose their own nominees. Finally, in *Anderson v. Celebreeze,* 460 U.S. 780(1983), the Supreme Court struck down an Ohio filing deadline that required independent candidates for President to declare their candidacies 75 days before party primaries in the state. The Court held that this early filing deadline imposed an unconstitutional burden on independent candidates and

voters because the deadline restricted voters' freedom of choice and freedom of association. *Id*. at 806. In each of these cases state law operated to "subject[ ] a group of voters or their party to disfavored treatment by reason of their views." 541 U.S. at 314.

Here, Plaintiffs have not demonstrated how the Secretary's performance of the ministerial function of certifying the election will in any way burden their associational rights. Nor can Plaintiffs utilize rank speculation as to what discretionary actions the Secretary of State might take if asked to justify their claims for injunctive relief. No request for a recount has been received pursuant to O.C.G.A. § 21-2-495, and there has thus been no trigger for the Secretary to direct *county officials* to conduct a recount of their *county* results which would then be re-aggregated into a statewide vote total. Plaintiffs do not show a likelihood of success on the merits on a claim based on an alleged violation of their right to freedom of association.

**c. Plaintiffs do not show a likelihood of success on their claim based on the right to vote.**

Part C. of Plaintiffs' motion argues that Secretary Kemp's "biased election administration violates Plaintiff's right to vote." Plaintiffs rely on *Burdick v. Takushi*, 504 U.S. 428 (1992), and *Anderson v. Celebrezze*, 460 U.S. 780 (1983), but these are cases that concern state election *rules, regulations, or processes* that in

some way impact the right to vote. *See Wexler v. Anderson*, 452 F.3d 1226, 1232 (2006) ("Recognizing that '[e]lection laws will invariably impose some burden upon individual voters,' the Supreme Court has explained that the level of scrutiny courts apply to state voting regulations should vary with the degree to which a regulation burdens the right to vote.") (discussing *Burdick* and *Anderson*). All of the other cases cited by Plaintiffs likewise involved challenges to voting or representation systems. *See Wesberry v. Sanders*, 376 U.S. 1 (1964) (redistricting); *Reynolds v. Sims*, 377 U.S. 533 (1964) (legislative apportionment); *Crawford v. Marion Cty Elec. Bd.*, 553 U.S. 181 (2008) (voter ID law); *Norman v. Reed*, 502 U.S. 279 (1992) (candidate filing deadline).

No authority is cited for the application of this line of cases to the kind of allegations advanced in this case. Plaintiffs assert that Secretary of State Kemp has "severely burdened Plaintiff's rights to vote – and to have their votes counted fairly and accurately – by subjecting them to an election system that is infected with partisan bias." But the complaint has no fact allegations that plausibly show, or even suggest, that votes are not being (or will not be) counted, and it has no fact allegations that plausibly show, or even suggest, that votes are not being counted accurately. Similarly, the motion offers no evidence of this kind. Instead, at bottom, the complaint and the motion challenge the notion that Secretary of State Kemp is

both a candidate for the office of Governor of the State of Georgia and also retains his elected position as the state's Secretary of State. But there is no suggestion, and no citation to any legal authority that would support a suggestion, that this fact somehow violates Plaintiffs' rights to vote.

Moreover, the complaint and motion misstate Georgia election law in key respects. For example, the complaint includes as its preliminary statement the assertion that Plaintiffs hold a "reasonable belief that [Secretary of State] Kemp will not be a fair judge of the outcome of the elections and will exercise his official duties in a biased manner that denies them the right to case an effective vote." Compl. ¶ 3. But these assertions are not accurate. Under Georgia law, the Secretary of State does not "judge the outcome of elections." Rather, as previously stated, Georgia's elections are conducted at the county level, Georgia's voters cast their ballots at the county level, the ballots are counted at the county level (and this is done in public), provisional ballots are verified at the county level, and then also at the county level the returns are certified by the duly appointed county election superintendent. The role of Secretary Kemp in certifying the statewide election results based on the returns that have been transmitted by the county superintendent is ministerial.

### 2. Plaintiffs Cannot Show That They Will Suffer Irreparable Harm Absent the Granting of a Temporary Restraining Order.

Even if Plaintiffs established a likelihood of success on the merits (which, as discussed, they have not), their failure to demonstrate "a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "A showing of irreparable injury is the sine qua non of injunctive relief." *Id.* "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id.; see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (injunctive relief is warranted only when a party "alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury").

Here, Plaintiffs contend that, absent immediate injunctive relief, they will suffer irreparable harm in the form of a purported "loss of the right to vote" and "to participate in a fairly administered election process." But the Plaintiffs exercised their right to vote in the 2018 primary and general elections, as each of them explicitly acknowledge in the complaint. *See* Compl., ¶¶ 6-10. And while the Plaintiffs also aver that they "plan to vote in any runoff conducted as part of the 2018 general election," the notion that they will somehow be prevented by the defendant from doing so is pure conjecture for which Plaintiffs provide no factual basis.

The same is true of Plaintiffs' claim that, absent immediate extraordinary relief, they will be denied the right to participate in a "fairly administered election." Their contention rests on the assumption that the Secretary of State can and will carry out his remaining functions in the electoral process – the certification of statewide election results and of any run-off elections – in a manner which will change or affect vote totals. But neither Plaintiffs' unsubstantiated claims of "bias" nor the only "evidence" provided in support of the motion – namely, a series of articles and opinion pieces from various news outlets – demonstrates that such a scenario is likely, much less substantially likely, to occur. Plaintiffs' claims of an impending loss of the right to vote are, in short, wholly speculative.

Moreover, as the record makes clear (and despite Plaintiffs' suggestion to the contrary), the role of the Secretary of State's staff in certifying statewide election results is purely ministerial; he does not, as Plaintiffs suggest, participate in calculating vote totals, and neither the Secretary of State nor any member of his staff has any discretion or ability to alter or change the vote totals submitted and certified by the counties. (Harvey Decl., ¶ 11). The Secretary of State's staff has the same role – a purely ministerial one – in any run-off elections which may be held. *Id.*, ¶ 12. Plaintiffs' contention that their right to vote in a fair election –whether the general election or any run-off election – is likely to be infringed by the exercise of what

amounts to ministerial duties devoid of discretion by the Secretary of State and his staff are wholly without basis. There is no irreparable harm.

There is another component to Plaintiffs' failure to demonstrate a substantial likelihood of irreparable harm which warrants discussion. In particular, Plaintiffs point to acts of alleged "partisan bias" in the conduct of elections which date back a number of years. And they certainly have been aware for quite some time that Kemp, while serving as Secretary of State, was running for statewide office while holding the position of Secretary of State. They were, in short, aware of many of the allegations which underlie their claims for injunctive relief well before their emergency motion was filed. Their delay in seeking the relief requested belies their claim of irreparable harm.

"[C]ourts have frequently considered delay in initiating an action where . . . preliminary injunctive relief has been requested" and held that "delay is suggestive of a lack of irreparable harm." *Calhoun v. Lillenas Publg.*, 298 F.3d 1228, 1235 (11th Cir. 2002). As the Eleventh Circuit has observed, its "sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming district court's finding of absence of irreparable harm where

preliminary injunction motion "relied exclusively on evidence that was available to [the plaintiff]" five months prior to the time the motion was filed). "A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm." *Id.; see also Regions Bank v. Kaplan*, 2017 U.S. Dist. LEXIS 127803, *9 (M.D. Fla. Aug. 11, 2017) (plaintiff's five month delay in filing action and seeking injunction after learning about allegedly fraudulent transfers "belie[d] [the plaintiff's' claim of an imminent and irreparable injury"); *U.S. Bank Nat'l Ass'n v. Turquoise Props. Gulf*, 2010 U.S. Dist. LEXIS 60882, 13-14 (S.D. Ala. June 18, 2010) (moving party's failure to act with reasonable diligence to protect its own interests after being on notice of the challenged conduct undercuts the movant's plea that it will suffer irreparable injury unless the court issues a mandatory injunction); *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2nd Cir. 1993) (holding that a party's delay in seeking an injunctive relief "severely undermines [its] argument that absent a stay irreparable harm w[ill] result").

Plaintiffs' delay in seeking the injunctive relief requested is sufficient to deny the injunction. , At a minimum, it severely undercuts their claim of irreparable harm and any need for immediate relief.

**3. The Damage to Secretary Kemp Outweighs any Alleged Damage to Plaintiffs.**

On a motion for temporary restraining order, the plaintiff bears the burden of showing that the perceived injury outweighs the damages that the preliminary injunction might cause to the defendant. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

Here, Plaintiffs seek to strip a state elected official of his statutory duties. "Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Stefanelli* v. *Minard*, 342 U.S. 117, 120 (1951)). Because the damage an injunction would have, on the ability of Defendant to perform his statutory duties, far outweighs any damage to Plaintiffs, this Court should deny injunctive relief.

**4. A Restraining Order is Adverse to the Public Interest.**

A plaintiff also bears the burden of showing that the preliminary injunction would serve the public interest. *Baker*, 856 F.2d at 169. Here, the public interest weighs heavily *against* the issuance of an injunction because the injunction sought by Plaintiffs is contrary to state law which provides that the Secretary of State certifies elections for statewide offices.

Indeed, Plaintiffs requested relief would have this court rewrite Georgia's election laws as it relates to the administrative acts attendant upon the certification of election results. Not only does Plaintiffs' requested relief strip the constitutionally and statutorily prescribed duties away from a public official of another sovereign who has been duly elected by the people of Georgia, but it goes further and invites this court to grant powers to the Governor that have no basis in the powers granted to that office by the people of Georgia or their elected representatives.

In allegedly seeking to protect the rights of Georgia voters, Plaintiffs would have this Court trample the system put into place by those same Georgia voters and their duly elected representatives. It is difficult to imagine any greater *harm* to the public interest than stripping away from Georgia voters the ability to invest an official of their *own choosing* with the attendant powers and duties that the people had invested in that office.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' request for a temporary restraining order should be denied.

Respectfully submitted,

CHRISTOPHER M. CARR 112505
Attorney General

ANNETTE M. COWART 191199
Deputy Attorney General

*/s/ Russell D. Willard*
RUSSELL D. WILLARD 760280
Senior Assistant Attorney General

*/s/ Cristina M. Correia*
CRISTINA M. CORREIA 188620
Senior Assistant Attorney General

Attorneys for Secretary of State Brian Kemp

Please address all
Communication to:
CRISTINA CORREIA
Senior Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334
ccorreia@law.ga.gov
404-656-7063
404-651-9325

**Certificate of Compliance**

I hereby certify that the forgoing document was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

*/s/ Cristina Correia*
Cristina Correia 188620
Senior Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2018, I electronically filed DEFENDANT BRIAN KEMP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Michael J. Moore
Charles W. Byrd
Caroline McGlamry
Wade H. Tomlinson III
Pope, McGlamry, Kilpatrick, Morrison, & Norwood, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 191625
Atlanta, GA 30326

Bryan L. Sells
The Law Office of Bryan L. Sells, LLC
P.O. Box 5493
Atlanta, GA 31107

Laurence M. Schwartztol
Justin Florence
Protect Democracy Project, Inc.
10 Ware Street
Cambridge, MA 02138

Ian Bassin
Protect Democracy Project, Inc.
222 Broadway Avenue, #1898
New York, NY 10038

Jessica Marsden
Protect Democracy Project, Inc.
106 S. Greensboro St., Suite E
Carrboro, North Carolina 27510

This 8th day of November, 2018.

*/s/ Cristina Correia*

Cristina Correia 188620
Senior Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334
ccorreia@law.ga.gov
404-656-7063
404-651-9325